UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

DONNA D. MARTIN,                           )
                                           )
                Plaintiff,                 )
                                           )
v.                                         )        No. 1:20-CV-117-DCP
                                           )
KILOLO KIJAKAZI[1],                        )
Acting Commissioner of Social Security,    )
                                           )
                Defendant.                 )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 12].  Now before the Court are

Plaintiff's Motion for Judgment on the Pleadings [Doc. 22] and Defendant's Motion for Summary

Judgment and Memorandum in Support [Doc. 24].[2]  Donna D. Martin ("Plaintiff") seeks judicial

review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of

Defendant Kilolo Kijakazi ("the Commissioner").  For the reasons that follow, the Court will

**DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On January 25, 2016, Plaintiff filed an application for disability insurance benefits pursuant

to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., claiming a period of disability that

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration ("the SSA") on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.  *See* 42 U.S.C. § 405(g).

[2] Plaintiff also filed a Motion for Leave to File Reply Brief [Doc. 26], which is not necessary under the applicable Local Rules.  Plaintiff subsequently filed duplicate replies [Docs. 27 and 28].  Therefore, Plaintiff's Motion for Leave [**Doc. 26**] will be **DENIED AS MOOT**, although the Court will consider Plaintiff's Reply [Doc. 27].

began on October 25, 2015, but subsequently amended to April 1, 2016. [Tr. 12, 35–37, 202–06].

After her applications were denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 118]. A hearing was held on February 12, 2019. [Tr. 31–63].[3] On March 25, 2019, the ALJ found that Plaintiff was not disabled. [Tr. 12–23]. The Appeals Council denied Plaintiff's request for review on March 6, 2020 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on May 5, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since April 1, 2016, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following "severe" impairments: degenerative disc disease of the cervical and lumbar spine; degenerative joint disease of the bilateral knees; cervicalgia; depressive disorder; panic disorder; anxiety disorder; and post-traumatic stress disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

---

[3] Plaintiff initially appeared for a hearing on August 8, 2018, which was subsequently rescheduled. [Tr. 64–72].

2

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to standing and walking a maximum of four hours of eight hours in a workday. The claimant can do no climbing of ladders, ropes or scaffolds and no more than occasionally climbing of ramps and stairs. She can perform occasional postural maneuvers (balancing, stooping, kneeling, crouching and crawling). She is limited to simple and detailed job tasks (SVP 1-4), but she cannot do skilled work (SVP 5 and above). She must have no more than occasional interaction with the public.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on January 27, 1967 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2016, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 14–23].

## III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation

4

omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected

5

to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's disability determination is not supported by substantial evidence because the ALJ mischaracterized and ignored significant aspects of the letter provided by Plaintiff's supervisor; improperly relied on the opinions of the nonexamining state agency physicians who did not review the complete medical record; and failed to properly consider the evidence and opinion from Plaintiff's treating physician. The Court will address Plaintiff's

6

allegations of error in turn.

### A.    Letter from Plaintiff's Supervisor

Plaintiff asserts that the ALJ failed "to properly consider and/or mischaracterize[d]" the letter provided by Emily Gray, Plaintiff's supervisor at her part-time job. [Doc. 23 at 9]. Plaintiff submitted the letter from her supervisor, Ms. Gray, at Southeastrans, Inc., where Plaintiff currently works as a Customer Service Representative on multiple contracts with the company on the weekend shift. [Tr. 379]. Ms. Gray stated that Plaintiff was "responsible for scheduling and dispatching non-emergency medical transportation for individuals with Tenncare and BlueCare insurance." [Id.]. Additionally, Ms. Gray detailed that Plaintiff had been working for the company for almost three years, and she had observed that Plaintiff "frequently complains about her knees hurting, back pain and having headaches, which causes problems with her being late or absent from work, as well as she often comes into work and must use a heating pad for her back." [Id.]. Lastly, Ms. Gray provided that Plaintiff wears knee braces every weekend and that she "witnessed [Plaintiff's] anxiety acting up more when we have agents in the center on the weekend that come in to do overtime." [Id.]. Therefore, Ms. Gray stated that "[d]ue to these issues, [Plaintiff] has continued to change her shift and shift hours to continue working with Southeastrans." [Id.].

In the disability decision, the ALJ first noted that Plaintiff's "work activity is very close to the threshold of substantial gainful activity," as well as that "[h]er employer has provided a letter describing her symptoms and work problems, but this letter does not describe any special work accommodations." [Tr. 15]. Additionally, the ALJ found that Plaintiff's "ability to perform basic work activities is a non-medical factor inconsistent with her alleged inability to work and has been considered as such in evaluating her residual functional capacity." [Id.]. In the RFC determination, the ALJ found that Plaintiff's "medically determinable impairments could

7

reasonably be expected to cause only a portion of the alleged symptoms," and therefore, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [Tr. 18]. In addition to several additional reasons, the ALJ relied upon Plaintiff's "work activity, in addition to her described daily activities and the objective evidence," which supported a finding that Plaintiff "has greater functional ability than she alleged." [*Id.*].

Plaintiff asserts that the letter from Ms. Gray "is consistent with [her] allegations and provides substantial support for a finding of disability." [Doc. 23 at 10]. Plaintiff claims that contrary to the ALJ's conclusion, Ms. Gray's letter details several special accommodations—such as her being late or absent from work and continuing to change her shift time. Further, Plaintiff maintains that "the ALJ erroneously found that [her] work activity is a non-medical factor that is inconsistent with her allegations of an inability to work," as Ms. Gray's letter notes "her difficulties with being late to work and with being absent f[r]om work due to her disabling impairments." [*Id.* at 11].

The Commissioner responds that "the ALJ considered Ms. Gray's observations and permissibly concluded that the noted 'symptoms and work problems' were not consistent with the objective medical and other evidence in the record." [Doc. 25 at 18]. Accordingly, the Commissioner alleges that "the ALJ considered all of the available evidence, including Ms. Gray's letter, but he permissibly concluded that the observations she set forth were not consistent with the record as a whole, including Plaintiff's repeatedly benign imaging studies . . . routine and conservative treatment history . . . and generally mild physical examination findings." [Doc. 25 at 19]. Plaintiff replies [Doc. 27] that the ALJ did not find that Ms. Gray's letter was inconsistent with the medical record, but instead mischaracterized the letter as stating that it did not describe

8

any special work accommodations.

At the outset, the Court notes that it could have found that Plaintiff's argument was waived, as Plaintiff fails to cite to any supporting case law or applicable regulations in support of her first allegation of error. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."); *see, e.g.*, *Kurt D. v. Saul*, No. 1:18-CV-297-SEB-MPB, 2019 WL 3848769, at *3 (S.D. Ind. July 26, 2019) ("Given Kurt D. did not cite any case law or regulations indicating that the agency waives its right to collect an overpayment if it does not notify a claimant within a certain time period, the undersigned finds that this argument has been waived."), *report and recommendation adopted sub nom.*, *Deichmann v. Saul*, 2019 WL 3842569 (S.D. Ind. Aug. 15, 2019).

However, the Court ultimately finds that the ALJ properly considered Ms. Gray's letter as a factor in evaluating Plaintiff's subjective symptoms of disability. The regulations provide that an ALJ may consider information from "non-medical sources." *See* 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4); *see also* Social Security Ruling 06–3p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (listing "other sources" as defined in §§ 404.1513(d) and 416.913(d) as including "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers").[4] Plaintiff does not assert that the ALJ failed to appropriately consider Ms. Gray's

---

[4] SSR 06–03p was rescinded effective March 27, 2017, s*ee Notice of Rescission of Social Security Rulings*, 82 Fed. Reg. 15263–01 (March 27, 2017), but was applicable to the ALJ's decision. "[N]umerous district courts in the Sixth Circuit, including [the Middle District of Tennessee], have held that the Commissioner's rescission of SSR 06-03p applies only to disability claims filed on or after March 27, 2017." *Kemp v. Saul*, No. 3:19-0431, 2020 WL 4937507, at *4 (M.D. Tenn. Aug. 24, 2020), *report and recommendation adopted by* 2020 WL 6305566 (M.D.

9

letter in violation of Social Security Ruling 06-3p. In *Lohr v. Comm'r of Soc. Sec.*, 559 F. Supp. 2d 784 (E.D. Mich. 2008), the Eastern District of Michigan considered a similar issue and found that the ALJ's "failure to consider, much less even mention" the limitations provided by two of the plaintiff's supervisors constituted reversible error. *Id.* at 793–94. However, unlike in *Lohr*, the ALJ in the present case explicitly discussed Ms. Gray's letter. Additionally, "the evidence omitted from the administrative opinion in *Lohr* involved the subject applicant's ability to perform his previous work, which the ALJ relied on in denying the plaintiff's application at step four of the evaluation." *Kemp*, 2020 WL 4937507, at *5. Ultimately, here, the ALJ "otherwise ensure[d] that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." SSR 06-3p at *6.

Further, in addition to Plaintiff's failure to support her contention that the ALJ's alleged mischaracterization of Ms. Gray's opinion constituted a basis for remand, the Court does not find that the ALJ mischaracterized Ms. Gray's letter in the disability decision. While Plaintiff points to Ms. Gray's description of Plaintiff using a heating pad for her back and wearing knee braces, there is no evidence regarding whether their use would interfere with Plaintiff's ability to perform work-related tasks. Moreover, to the extent Plaintiff portrays Ms. Gray's observation that Plaintiff has problems with being late or absent from work and that Plaintiff "has continued to change her shift and shift hours," as formal work accommodations precluding the performance of any work on a full-time, consistent basis, such assertion would be inaccurate. Plaintiff cites no authority suggesting that an ALJ errs by failing to incorporate a lay witness's statement that simply suggests possible limitations may (or may not) be necessary. *See Boykins v. Comm'r of Soc. Sec.*, No. 1:13-

---

Tenn. Oct. 28, 2020).

10

CV-1024, 2015 WL 1477756, at *9 (W.D. Mich. Mar. 31, 2015) ("The testimony of lay witnesses . . . is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians.") (quoting *Simons v. Barnhart,* 114 F. App'x. 727, 733 (6th Cir. 2004)). Plaintiff does not address any particular medical records which demonstrate that Ms. Gray's observations are fully supported by the reports of treating physicians. Additionally, it is clear that the ALJ considered Plaintiff's symptoms and work problems noted in Ms. Gray's letter but permissibly concluded that Plaintiff's ability to perform basic work activities was inconsistent with claimed disabling limitations.

Lastly, Plaintiff does not challenge the remaining factors relied upon by the ALJ in finding that her statements concerning the disabling effects of her symptoms were not entirely consistent with the medical record and other evidence in the record. The ALJ's decision postdates Social Security Ruling 16-3p, which eliminates the use of the term "credibility" from the applicable policy regulation and clarifies that a "subjective symptom evaluation is not an examination of an individual's character." 2016 WL 1119029, at *1 (Mar. 16, 2016); *see also Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (noting that under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility"), *report and recommendation adopted by* 2018 WL 494523 (S.D. Ohio Jan. 22, 2018). However, "[t]he two-step process and the factors ALJs consider when assessing the limiting effects of an individual's symptoms have not changed with the advent of SSR 16-3p." *Holder v. Comm'r of Soc. Sec.*, No. 1:17-CV-00186-SKL, 2018 WL 4101507, at *10 n.5 (E.D. Tenn. Aug. 28, 2018).

The ALJ is still tasked with first determining whether there is an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an

11

individual's symptoms, such as pain." SSR 16-3p, 2016 WL 1119029, at *2–3. Then, the ALJ is responsible for determining the intensity, persistence, and limiting effects of an individual's symptoms, including assessing their: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *4–8.

"Despite the linguistic clarification, courts continue to rely on pre-SSR 16-3p authority providing that the ALJ's credibility determinations are given great weight." *Getz v. Comm'r of Soc. Sec.*, No. CV 18-11625, 2019 WL 2710053, at *3–4 (E.D. Mich. June 10, 2019), *report and recommendation adopted by* 2019 WL 2647260 (E.D. Mich. June 27, 2019) (citing *Kilburn v. Comm'r of Soc. Sec.*, No. 1:17-CV-603, 2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty v. Comm'r of Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018)).

Here, the Court finds that the ALJ appropriately reviewed the intensity, persistence and limiting effects of Plaintiff's symptoms pursuant to SSR 16-3p. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713–14 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess."). The ALJ noted that Plaintiff "maintained the ability to perform an array of daily activities," such as cooking meals, washing dishes, shopping in stores, and working part-time. [Tr. 18]. Here, the ALJ found that Plaintiff's "work activity, in addition to her described daily activities and the objective evidence support a finding [that] the claimant has greater functional ability than she alleged." [*Id.*].

12

Additionally, the ALJ found that the objective evidence was only partially consistent with Plaintiff's allegations, concluding that her "symptoms have benefited from conservative and routine treatment." [*Id.*]. Similarly, the ALJ noted that "[w]hile the claimant alleged her impairments limited her ability to lift, squat, bend, stand, reach, walk, sit, kneel and climb stairs, physical examinations demonstrate greater functional ability." [Tr. 19]. Therefore, Plaintiff's allegation of error regarding the ALJ's treatment of the letter of her supervisor does not present a basis for remand.

### B. Nonexamining State Agency Physicians

Plaintiff asserts that the ALJ erred in relying on the opinions of the nonexamining state agency physicians, as they only considered evidence prior to December 31, 2016. [Doc. 23 at 13]. Plaintiff notes that her date last insured was subsequently corrected to December 31, 2018, and again later corrected to December 31, 2020. Plaintiff cites to numerous treatment records which she claims the nonexamining state agency physicians did not review, including treatment records relating to her intermittent diarrhea and constipation which she claims, "is inconsistent with the State agency consultants' opinions and the ALJ's decision that [she] does not have a severe gastrointestinal and/or digestive impairment." [*Id.* at 15]. Similarly, Plaintiff cites to the alleged significant mental health records which the nonexamining state agency physicians did not review, as well as asserts that these physicians did not review x-rays of her lumbar spine that revealed "exuberant marginal osteophyte spurring and facet arthropathy on the left at L4-5 and L5-S1." [*Id.* at 16].

The Commissioner responds that the RFC is not required to mirror any opinion from a medical source and "the ALJ permissibly weighed all of the evidence, comparing each opinion with the objective medical and other evidence in the entire record, including the subsequently

submitted evidence." [Doc. 25 at 21]. Additionally, the Commissioner notes that the ALJ's RFC determination was "not identical to the assessments of the State agency consultants," as "the ALJ implemented limitations that accounted for, among other conditions, Plaintiff's severe mental impairments, while the State agency consultants did not." [*Id.*]. Plaintiff replies that "the ALJ's RFC assessment with regard to [her] physical capabilities and limitations is literally identical to the State agency consultants' opinions from the initial denial in this case." [Doc. 27 at 3].

State agency medical consultants, Reeta Misra, M.D. and Iris Rotker, M.D. reviewed the evidence of record at the initial and reconsideration levels of the agency's review on December 29, 2016 and April 20, 2017, respectively. [Tr. 84–88, 103–05]. Dr. Misra opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, as well as stand and/or walk for four hours and sit about six hours in an eight-hour workday. [*Id.*]. Further, Dr. Misra found that Plaintiff could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but that she could never climb ladders, ropes, or scaffolds. [*Id.*]. Dr. Rotker affirmed Dr. Misra's findings at the reconsideration level of the agency's review. [*Id.*].

State agency psychological consultants, M. Duncan Currey, Ph.D. and Larry Welch, Ed.D., reviewed Plaintiff's mental impairments using the psychiatric review technique on January 5, 2017 and April 19, 2017, respectively. [Tr. 81–83, 100–01]. Dr. Currey found that Plaintiff had nonsevere impairments of affective disorder, anxiety disorder, and substance addiction disorder, as well as that Plaintiff had mild restriction of activities of daily living, difficulties in maintaining social functioning, and maintaining concentration, persistence, or pace, but that she had no repeated episodes of decompensation. [Tr. 82–83]. As noted by the Commissioner, although the "specific criteria of the psychiatric review technique changed in the intervening period between these two assessments," [Doc. 25 at 8 (citing 81 Fed. Reg. 66137, 66164–65 (Jan. 17, 2017)], Dr.

14

Welch found identical nonsevere impairments, as well as mild limitations in Plaintiff's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  [Tr. 100–01].

In the disability decision, the ALJ found that "the medical opinions are generally in accord with a modified-light RFC and not persuasive in limiting the claimant further than the residual functional capacity set forth above."  [Tr. 20].  The ALJ noted that the state agency medical consultants "found the claimant could perform light work with additional postural limitations due to" Plaintiff's knees.  [*Id.*].  The ALJ afforded great weight to "this opinion because the limitations are consistent with the objective findings" and Plaintiff's limited medical treatment.  [*Id.*].

Plaintiff was also consultatively examined by Stephen Goewey, M.D., on April 11, 2016.  [Tr. 480].  After her examination, Dr. Goewey assessed that Plaintiff "will be able to sit between four and six hours daily, stand and walk between three and four hours daily, [and] lift and carry between 20 and 25 [pounds] frequently."  [Tr. 483].  The ALJ afforded great weight to this opinion "because the limitations are based on the objective results of the examination and are consistent with the benign physical examinations throughout the medical record."  [Tr. 19].

Plaintiff was examined again by Dr. Goewey on December 14, 2016.  [Tr. 504].  Dr. Goewey opined that Plaintiff could sit between four and six hours daily and stand/walk for at least four hours daily, as well as lift and carry at least twenty to thirty pounds frequently.  [Tr. 506].  Additionally, Dr. Goewey advised limited activities of squatting, kneeling, and bending.  [*Id.*].  Lastly, Dr. Goewey found that Plaintiff did not require the use of accessory equipment for ambulation.  [*Id.*].  The ALJ similarly afforded great weight to this opinion, finding "the limitations are consistent with the examination, which showed the claimant's impairments are not prohibitively restrictive."  [Tr. 20].

15

Plaintiff was consultatively examined by Dee Langford, Ed.D. on April 20, 2016. [Tr. 486]. Dr. Langford opined that Plaintiff appears to fall into the average range of intellectual functioning, showed no evidence of short-term memory impairment, showed evidence of mild impairment in her ability to sustain concentration, and showed no evidence of impairment in her long-term and remote memory functioning. [Tr. 489]. Dr. Langford assessed that Plaintiff "appears to meet the criteria for a depressive condition in that she has lost interest and enjoyment in usual activities," as well as that "[h]er energy and activity are decreased, and she reports chronic insomnia" in addition to her decreased self-esteem and confidence. [*Id.*]. Additionally, Dr. Langford found that Plaintiff shows some evidence of a mild impairment in her social relating, appears to be mildly impaired in her ability to adapt to change, but that she appears able to follow written and spoken instructions. [*Id.*]. Dr. Langford diagnosed persistent depressive disorder, depressive disorder due to multiple medical conditions, panic disorder, mild cocaine use disorder, and moderate cannabis use disorder. [Tr. 490].

In the disability decision, the ALJ afforded little weight to Dr. Langford's opinions because "the limitations are based on a one-time assessment of the claimant's functional abilities and is inconsistent with the record as a whole." [Tr. 21]. Additionally, the ALJ found that Plaintiff's "mental treatment records show reduced stress tolerance," which the ALJ interpreted "as causing moderate limitation in social interaction and concentration, persistence, and pace." [*Id.*]. The ALJ found that "[f]unctionally interpreted, such limitations would preclude skilled task[s] and limited her to no more than occasional interaction with the public." [*Id.*].

Next, the ALJ found that Plaintiff "conservatively treated her mental impairments with conservative and routine treatment of medication, medication management, and psychotherapy sessions," as well as that "[t]he medical evidence demonstrates with medication, the claimant

16

reported improved and decreased symptoms." [*Id.*]. Ultimately, the ALJ found that "while the record shows with medication and consistent treatment, the claimant's limitations are improved, the residual functional capacity properly precluded skilled tasks and more than occasional public interaction." [*Id.*]. Therefore, the ALJ accounted for Plaintiff's mental impairments by "according reasonable restrictions that are in excess of those accorded by examining/consulting mental sources of record." [*Id.*].

"State agency medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *2 (July 2, 1996)). Therefore, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3. "One such circumstance . . . [is] when the 'State agency medical . . . consultant's opinion is based on review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting SSR 96–6p, 1996 WL 374180, at *3).

"[B]efore an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record. In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (quoting *Blakely*, 581 F.3d at 409).[5] "[A]n ALJ may rely on

---

[5] At the outset, the Court admonishes both parties for their failure to cite to these recent controlling Sixth Circuit cases directly addressing when the ALJ relies upon the opinion of a

the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record." *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493–94 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)). The Sixth Circuit has found that an ALJ satisfied *Blakley* by reviewing the medical evidence that was entered after the nonexamining state agency consultant's opinion and explaining why the consultant's opinion was afforded greater weight despite the subsequent evidence. *Id.*

The ALJ's decision reflects that he made an independent determination based on all the medical evidence and that his analysis spanned the entire record; thus, it was appropriate to accept the opinions of the nonexamining state agency consultants. *See Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 247–48 (6th Cir. 2016) (affirming ALJ's assessment of great weight to the dated nonexamining state agency consultant's opinion, rather than the current treating physician opinion found to be inconsistent with the record, as "the ALJ's own analysis clearly spanned the entire record—through the final degenerative changes to [Plaintiff's] spine that culminated in a cervical discectomy and fusion, the last medical event included in the record"); *accord Mcwhorter v. Berryhill*, No. 3:14-cv-1658, 2017 WL 1364678, at *12 (M.D. Tenn. Apr. 14, 2017); *Quinlavin v. Comm'r of Soc. Sec.*, No. 15-cv-731, 2017 WL 583722, at *4 (N.D. Ohio Feb. 14, 2017). Plaintiff does not point to any specific medical records that the ALJ did not encompass in the disability decision and the RFC determination. Moreover, the Court finds that the ALJ extensively discussed the medical record with respect to Plaintiff's lumbar spine and mental health treatment in great

---

nonexamining source who did not review the entire medical record.

detail. With respect to Plaintiff's alleged gastrointestinal impairments, the ALJ found that Plaintiff's GERD and endometriosis did not constitute severe impairments. [Tr. 15].

In *Kepke*, the Sixth Circuit found that the ALJ subjected the opinions of two nonexamining state agency physicians to some scrutiny, as "the ALJ disagreed with [one of the nonexamining physician's] assessment[s] of Kepke's limitations in her activities of daily living and social functioning, and applied even greater restrictions in this area than [the nonexamining state agency physician] opined were appropriate." 636 F. App'x 625, 632 (6th Cir. 2016). Accordingly, as the ALJ specifically noted that he included "reasonable mental restrictions that are in excess of those according by examining/consulting mental sources of record," he subjected the opinions of the nonexamining state agency physicians to scrutiny. [Tr. 21]. Although the nonexamining state agency consultants did not review a complete record, "the ALJ's own analysis clearly spanned the entire record." *See Gibbens*, 659 F. App'x at 247–48. Therefore, the ALJ "subjected [the nonexamining state agency consultants'] opinion[s] to scrutiny" sufficient to find that he considered that the nonexamining state agency consultants did not review the entire record. *See Kepke*, 636 F. App'x at 632.

Ultimately, an ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence of record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727–28 (6th Cir. 2013). The Court notes that although an ALJ is required to consider every medical opinion in the record, 20 C.F.R. § 404.1527(c), he is not bound to adopt any particular opinion when formulating a claimant's RFC. *See Rudd*, 531 F. App'x at 728 ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual

19

is disabled.'") (quoting SSR 96-5p, 1996 WL 374183 (July 2, 1996)).  The ALJ is responsible for weighing medical opinions, as well as resolving conflicts in the medical evidence of record.  *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ).  The Court finds that the ALJ appropriately considered the medical opinions of record, and that the ALJ's RFC determination is supported by substantial evidence.

### C.    Plaintiff's Treating Physician

Plaintiff asserts that the ALJ failed to properly consider or address evidence and opinions from her treating physician.  Plaintiff submits that she has a history of chronic back and knee pain, and "bilateral knee unicompartment arthroplasty approximately fifteen years ago, and she was struck by a motor vehicle in 2010 while a pedestrian, which exacerbated her knee impairments." [Doc. 23 at 17].  Plaintiff cites to the May 20, 2010 progress note from Joshua A. Johnston, M.D., indicating that Plaintiff reported with complaints of right knee pain for an assessment after her right knee arthroplasty.  [Tr. 654–55].  Dr. Johnston noted that he did "not see any evidence of new fracture, subluxation, [or] dislocation," that Plaintiff "sustained a contusion of the knee following the injury . . . that will resolve with time," that "[s]ome of the pain she is experiencing now may be due to the residual arthrosis of her lateral and patellofemoral compartments," and that "[g]iven the malalignment, I think this will continue to go on to failure, and she will need a revision total knee arthroplasty at some point in the future."  [Tr. 655].  However, Plaintiff excludes the remainder of Dr. Johnston's notation that "at this point, it is not bothersome enough for her to want to proceed with this" and "[i]n any event, she is very young and this would be a much larger procedure than her initial procedure."  [*Id.*].

Plaintiff claims this treatment note is an opinion that is consistent with the opinion of the

20

consultative examiner noting a limited range of motion in her knee. Therefore, Plaintiff claims that "despite this extremely significant evidence regarding the severity of [her] bilateral knee impairments, the ALJ failed to evaluate or even consider this evidence in his decision." [Doc. 23 at 18]. Ultimately, Plaintiff asserts that the ALJ failed to afford proper weight to the opinion of her treating physician.

The Commissioner responds that "Dr. Johnston indicated nearly six years before Plaintiff's onset date" that she would need a total knee arthroplasty at some point in the future, but that he "neither implemented restrictions for Plaintiff nor indicated what activities Plaintiff could 'still do despite the impairment.'" [Doc. 25 at 23 (citing 20 C.F.R. § 404.1527(a)(1))]. Therefore, the Commissioner asserts that these comments do not constitute a medical opinion "and therefore, the ALJ was not required to articulate how this evidence was considered in the decision." [*Id.*].

A medical opinion is defined in 20 C.F.R. § 404.1527(a)(2) as one "that reflects[s] judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." In considering a claim of disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).[6] However, a treating physician's opinion as to the nature and severity of an impairment must be given "controlling weight" only if it is (1) well-supported by medically acceptable clinical and

---

[6] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c); 416.927(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to the opinion will be determined based upon the length of treatment, frequency of examinations, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *Id.*

The ALJ is not required to explain how he considered each of these factors but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight").

Ultimately, the Court agrees with the Commissioner that Dr. Johnston's treatment note does not constitute a medical opinion under the applicable regulations, and thus the ALJ was not required to explain the weight it was afforded. 20 C.F.R. § 404.1527(a)(2); *see, e.g., Dunlap v. Comm'r of Soc. Sec.*, 509 F. App'x 472, 476 (6th Cir. 2012) (finding a doctor's "report cannot constitute a medical opinion, because it consists primarily of a restatement, often verbatim, of the underlying evidence contained in [claimant's] medical records—evidence that the administrative law judge fully considered and set out in his decision."); *Hope v. Saul*, No. 3:18-CV-121-HBG, 2019 WL 4451204, at *8 (E.D. Tenn. Sept. 17, 2019). "The law and the Social Security regulations recognize a difference between a treating physician's treatment notes or comments, and a treating physician's 'medical opinion.'" *Calloway v. Comm'r of Soc. Sec.*, 2016

WL 1165948, at *11 (E.D. Mich. Mar. 1, 2016), *report and recommendation adopted by*, 2016 WL 1161529 (E.D. Mich. Mar. 23, 2016) (citing 20 C.F.R. § 404.1527(a)(2)); *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (finding that a doctor's observations do not qualify as "medical opinions" under the Social Security regulations, and "without more, are not the type of information from a treating physician which will be provided great weight under 20 C.F.R. § 404.1513(b)")).

Therefore, the ALJ was not required to explain any weight to this treatment note. Additionally, Plaintiff fails to point to subsequent evidence in the medical record echoing Dr. Johnston's statement that she would require another total knee arthroplasty. In the disability decision, the ALJ noted that Plaintiff underwent bilateral partial knee replacement and considered the effect of any postural limitations. [Tr. 19]. As such, Plaintiff's argument that the ALJ erred by failing to consider the specific treatment note from her treating physician, Dr. Johnston, does not constitute a basis for remand.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 22**] will be **DENIED**, Plaintiff's Motion for Leave to File a Reply Brief [**Doc. 26**] will be **DENIED AS MOOT**, and the Commissioner's Motion for Summary Judgment [**Doc. 24**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge